**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                No. 98-4084

THERON JOHNNY MAXTON,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                No. 98-4120

THERON JOHNNY MAXTON,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                No. 98-4184

THERON JOHNNY MAXTON,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                No. 98-4431

THERON JOHNNY MAXTON,
Defendant-Appellant.

Appeals from the United States District Court
for the District of South Carolina, at Columbia.
Dennis W. Shedd, District Judge.
(CR-97-490)

Argued: May 6, 1999

Decided: June 29, 1999

Before NIEMEYER, LUTTIG, and MOTZ, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Parks Nolan Small, Federal Public Defender, Columbia,
South Carolina, for Appellant. Deborah Brereton Barbier, Assistant
United States Attorney, Columbia, South Carolina, for Appellee. **ON
BRIEF:** J. Rene Josey, United States Attorney, Columbia, South Car-
olina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

A grand jury returned an eight count indictment against Theron
Johnny Maxton for sending threatening letters through the mail in
violation of 18 U.S.C. § 876 and making threats to assault or kill judi-
cial officers or their families in retaliation for the performance of their

official duties in violation of 18 U.S.C. § 115. A jury convicted Maxton of all eight counts. Maxton asserts that his criminal conviction should be vacated and the case remanded for a new trial because the district court assertedly erred in (1) permitting Maxton to waive his presence at trial, (2) accepting a waiver of Maxton's right to counsel that was not knowing and voluntary, and (3) preventing Maxton from presenting evidence at his competency hearing. Finding no reversible error, we affirm.

I.

Maxton's principal contention is that the district court improperly permitted him to waive his presence at trial. Maxton, who was incarcerated on state charges both at the time he committed the federal offenses and at the time of trial, maintains that a defendant who is in custody "does not have a right to give up his presence at trial, nor does a judge have authority to grant a defendant's request not to be present." Brief of Appellant at 17.

Recently, in United States v. Lawrence, 161 F.3d 250 (4th Cir. 1998), we considered and rejected precisely this claim. In Lawrence, as here "after the time the case was called and the trial began, but before the jury was empaneled, [the in-custody defendant] asked that he be permitted to absent himself from the courtroom until the return of the verdict." Id. at 254-55. Relying on Diaz v. United States, 223 U.S. 442 (1912), we held that because the defendant "was present at the beginning of his trial and voluntarily absented himself, there is no error in this case. Even if there be error, it is invited error brought on at Lawrence's own request and, as such, is not reversible." Id. at 255.

Although at oral argument before us defense counsel asserted that Lawrence was distinguishable from the case at hand, we believe the cases are identical in all material respects. We note that in his reply brief Maxton, himself, characterized Lawrence as "a similar case with a similar issue" in which the district court also found that an "in-custody defendant had a right to waive his presence at trial." Reply Brief at 10.

Nor can Maxton prevail on his alternative argument that he did not knowingly and voluntarily waive his right to be present at trial.

3

Rather, the record reveals that the district court went to considerable pains to make sure that Maxton's waiver was knowing and voluntary. On January 29, when Maxton told the district court for the first time that he wished to be absent from the trial, the court informed him that it would advise against waiving this right and explained the difficulties associated with not being present at trial, including the fact that Maxton would not be able to object to evidence that the Government introduced. The court refused to grant Maxton's request immediately and urged him to rethink it.

Four days later on the day of trial, February 2, Maxton repeated that he did not wish to be in the court room during the trial and that he wanted to go back to his cell. The district court again advised Maxton against waiving his right to be present at trial. The court told Maxton that "I think it would be smart for you to be present for your trial" and "you have a right to stay here." In the face of these repeated warnings, Maxton insisted that he wished to waive his right to be present at trial. We can only conclude that the waiver was knowing and voluntary.

II.

Maxton next maintains that he did not knowingly and voluntarily waive his right to counsel. He grounds his argument on three bases: (1) the inquiry conducted by the magistrate judge was assertedly inadequate to support a finding of knowing and voluntary waiver, (2) the magistrate's decision that Maxton properly waived his right to counsel was conditioned on the district court having a further discussion with Maxton regarding standby counsel, which never took place; and (3) questions as to his competency prevented the waiver from being knowing and voluntary. None of these grounds are persuasive.

The colloquy between Maxton and the magistrate judge well complied with the standards set forth in Faretta v. California, 422 U.S. 806 (1975), and United States v. Singleton, 107 F.3d 1091 (4th Cir. 1997). After Maxton clearly and unequivocally stated that he did not "need no lawyer," the magistrate judge warned him of the difficulties of proceeding without counsel. The magistrate judge thoroughly informed Maxton of the requirement that at trial he conform to evidentiary and procedural rules, and the principles of criminal law; the

4

magistrate also notified Maxton as to the maximum sentences that could be imposed against him if he were found guilty on each count. Finally, the magistrate judge advised Maxton that he would be better off if defended by a trained lawyer and it was unwise to represent himself. Nevertheless, Maxton insisted that he did not need a lawyer. The magistrate judge did not err in concluding that Maxton's waiver was knowing and voluntary.

Nor did the magistrate judge's decision depend upon further discussion with the district judge regarding standby counsel. After questioning Maxton, the magistrate judge clearly found that Maxton had knowingly and voluntarily waived his right to counsel. It is true that the judge did not dismiss Maxton's counsel at that time but stated instead that he would leave that decision to the district judge. However, the magistrate judge did not in any way suggest that his finding as to waiver was contingent upon the district judge's determination, one way or the other, as to standby counsel.

Finally, Maxton's contention that at the time he had the waiver colloquy with the magistrate judge "there was a serious question as to his competency" is not borne out by the record. At the time of his colloquy with the magistrate judge, Maxton had already been examined and found competent by a psychiatrist at the Federal Correctional Institute (FCI) in Butner, North Carolina, and his defense counsel had stated that the defense would stipulate to the psychiatric report and would not contest the findings, nor request a competency hearing. Thus, Maxton's competency to stand trial had already been established before the determination of his waiver of his right to counsel.

III.

A few weeks after Maxton's former counsel had stipulated to the psychiatric report from FCI Butner finding him competent for trial and had stated that the defense would not contest its findings or request a competency hearing, Maxton, stating that he wished to present an insanity defense, moved for a competency hearing and to subpoena Dr. Donald Morgan. Maxton did not assert in these motions that he was incompetent to stand trial.

The district court provided Maxton with an opportunity to explain why the FCI Butner evaluation should be disregarded and Dr. Morgan

5

subpoenaed. Maxton responded that the Butner evaluation was erroneous when it stated that certain personnel had talked with him and in finding "nothing wrong with me." Maxton further claimed that he heard "voices in his head," and that Dr. Morgan, who had examined him in 1995 "would back [him] up." Again, Maxton did not assert that Dr. Morgan would opine that Maxton was incompetent to stand trial.

On the basis of this evidence, the district court found Maxton competent to stand trial and refused to subpoena Dr. Morgan. The court did ask the prosecutor to ascertain that the personnel at FCI Butner listed in the report had, in fact, evaluated Maxton; the personnel subsequently certified that they had examined him on numerous occasions and that their October 1997 report was "factually accurate." As Maxton concedes, see Brief of Appellant at 37, we can reverse only if we find the district court abused its discretion in refusing to subpoena Dr. Morgan. See United States v. Mason, 52 F.3d 1286 (4th Cir. 1995). In view of the facts set forth above-- including Maxton's failure to assert that Dr. Morgan would testify that Maxton was not competent to stand trial -- we can hardly conclude that the district court abused its discretion.

AFFIRMED

6